UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x

FREDERICK SCHULTZ,                          :
        Defendant-Movant,                            05 Civ. 246 (JSR)
                                            :        01 Cr. 683 (JSR)

                v.                          :

UNITED STATES,                              :
                                            :
        Respondent.
--------------------------------------x


GOVERNMENT'S RESPONSE TO MOVANT'S MOTION, PURSUANT TO TITLE 28,
UNITED STATES CODE, § 2855, TO VACATE SENTENCE




                        DAVID N. KELLEY
                        United States Attorney


                    By: Marcia Ruth Isaacson
                        Assistant United States Attorney
                        (212) 637-2211

## TABLE OF CONTENTS

**Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**POINT ONE**

Schultz Cannot Circumvent *Teague* By Refashioning his Claim
Under *Booker* as One Under *Apprendi* and *Ring* . . . . . . . . 6
    A.   Applicable Law
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B.   Discussion
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**POINT TWO**

Schultz's Counsel Was Not Constitutionally Ineffective For
Failing To Raise *Apprendi*-Related Claims At Sentencing or For
Failing to Raise *Apprendi*- or *Ring*-Related Claims on
Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . .11

    A. Applicable Law . . . . . . . . . . . . . . . . . . . . .   12
    B. Discussion
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

**POINT THREE**

Even If Schultz's Claim is Deemed To Constitute a *Booker*
Claim, It Fails Because *Booker* Does Not Apply Retroactively
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
    A.   *Booker* Established a New Rule
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
    B.   The Rule Announced In *Booker* Was a Procedural Rule
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20
    C.   *Booker* Did Not Announce a Watershed Procedural Rule
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)............................................................. *passim*

*Beard v. Banks*, 124 S. Ct. 2504 (2004) ........................................................................ 18

*Bousley v. United States*, 523 U.S. 614 (1998) ............................................................ 8, 9, 23

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ...................................................................... 7

*Butler v. McKellar*, 494 U.S. 407 (1990) ......................................................................... 24

*Clark v. Stinson*, 214 F.3d at 322 .................................................................................... 14

*Coleman v. Thompson*, 501 U.S. 722 (1991) ...................................................................... 9

*Coleman v. United States*, 329 F.3d 77 (2d Cir. 2003) .............................................. 21, 26

*Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002) ............................................... 21, 22

*Edwards v. Carpenter*, 529 U.S. 446 (2000) ..................................................................... 10

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ..................................................................... 23

*Glover v. United States*, 531 U.S. 198 (2000) ................................................................... 15

*Graham v. Collins*, 506 U.S. 461 (1992) .................................................................... 18, 24

*Graziano v. United States*, 83 F.3d 587 (2d Cir. 1996) ...................................................... 7

*Jones v. Barnes*, 463 U.S. 745 (1983) .............................................................................. 14

*Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000) ................................................................. 22

*Leaks v. United States*, 841 F. Supp. 536 (S.D.N.Y. 1994) ............................................. 10

*Massaro v. United States*, 538 U.S. 500 (2003)............................................................8, 12

*Mayo v. Henderson*, 13 F.3d 528 (2d Cir. 1994) ....................................................... 14, 15

*McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001) ................................................. 22

*McReynolds v. United States*, 397 F.3d 479, 2005 WL 237642 (7th Cir. Feb 2, 2005) ............................................................................................. 17, 19, 21

*Murray v. Carrier*, 477 U.S. 478 (1986) .................................................................... 9, 11, 13

*O'Dell v. Netherland*, 521 U.S. 151 (1997) ...................................................................... 23

*Ring v. Arizona*, 536 U.S. 584 (2002) ......................................................................... *passim*

*Saffle v. Parks*, 494 U.S. 484 (1990) ............................................................................... 23

*Sawyer v. Smith*, 497 U.S. 227 (1990) ....................................................................... 22, 23, 24

*Schriro v. Summerlin*, 124 S. Ct. 2519 (2004) ......................................... 17, 20, 21, 24, 25

*Spaziano v. Singletary*, 36 F.3d 1029 (11th Cir. 1994) .................................................... 15

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................................... 12, 13

*Summerlin*, 124 S. Ct. 2522 .................................................................................... 20, 21, 25

*Teague v. Lane*, 489 U.S. 288 (1989) ......................................................................... 6, 18, 22, 24

*In re Turner*, 267 F.3d 225 (3d Cir. 2001) ....................................................................... 22

*United States v. Addonizio*, 442 U.S. 178 (1979) ............................................................. 8

*United States v. Aguirre*, 912 F.2d 555 (2d Cir. 1990) .................................................... 12

*United States v. Ardley*, 273 F.3d 991 (11th Cir. 2001) .................................................. 14

*United States v. Booker*, __ U.S. __, 125 S. Ct. 738, 2005 WL 50108 (Jan. 12, 2005) ........................................................................................................... *passim*

*United States v. Frady*, 456 U.S. 152 (1982) .................................................................... 8

*United States v. Garcia*, 240 F.3d 180 (2d Cir. 2001) ..................................................... 16

*United States v. Luciano*, 311 F.3d 146 (2d Cir. 2002) ................................................... 16

*United States v. Mandanici*, 25 F.3d 519 (2d Cir. 2000) ........................................... 23, 24

*United States v. Moss*, 252 F.3d 993 (8th Cir. 2001) ...................................................... 22

*United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) ................................................. 22

*United States v. Warren*, 335 F.3d 76 (2d Cir. 2003) ....................................................... 8

*United States v. Wright*, 524 F.2d 1100 (2d Cir. 1975)(citation omitted) ........................ 7

## DOCKETED CASES

*Concepcion v. United States*, No. 97-2171, 2004 WL 1895114 (E.D.N.Y.

Aug. 25, 2004) .......................................................................................................... 26

*Garcia v. United States*, No. 04-0465, 2004 WL 1752588 (N.D.N.Y. Aug.
4, 2004) ................................................................................................................... 26

*Green v. United States*, No. 04-1817, 2005 WL 237204 (2d Cir. Feb. 2,
2005) ....................................................................................................................... 19

*Humphress v. United States*, No. 03-5951, 2005 WL 433191 (6th Cir.
Feb. 25, 2005) ................................................................................................... 17, 19

*Narvaez v. United States*, No. 95-941, 2003 WL 21749638 (S.D.N.Y. July, 19, 2003) ... 9

*Rucker v. United States*, No. 04-00914, 2005 WL 331336 (D. Utah Feb. 10,
2005) .............................................................................................................. 18, 19, 21

*United States v. Aikens*, No. 01-335, 2005 WL 433440 (E.D. Pa. Feb. 25,
2005) .................................................................................................................. 18, 19

*United States v. Crosby*, No. 03-1675, 2005 WL 240916 (2d Cir. Jan. 14,
2005) ....................................................................................................................... 18

*United States v. Lowe*, No. 04-50019, 2004 WL 1803354 (N.D.Ill. Aug. 5,
2004) ....................................................................................................................... 26

*United States v. Stoltz*, No. 03-5580, 2004 WL 1619131 (D. Minn. July 19, 2004).........26

*Varela v. United States*, No. 04-11725, 2005 WL 367095 (11th Cir. Feb.
17, 2005) ................................................................................................................. 24

The Government respectfully submits this memorandum in response to Frederick Schultz's Petition to Vacate his sentence pursuant to Title 28, United States Code, Section 2255. Relying on the Supreme Court's recent decision in *United States* v. *Booker*, __ U.S. __, 125 S. Ct. 738, 2005 WL 50108 (Jan. 12, 2005), and on its earlier decisions in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and *Ring* v. *Arizona*, 536 U.S. 584 (2002), Schultz claims that he is entitled to collateral relief because his sentence was imposed in violation of law. This argument is without merit. Schultz procedurally defaulted on his claims under *Apprendi* and *Ring*, which, in any event, had no merit. Although *Booker* announced a new procedural rule of constitutional law, it was not a watershed rule that gave rise to retroactive application. Schultz's argument that his counsel was ineffective because he did not foresee the Court's opinion in *Booker* and argue at the time of his sentencing or on direct appeal that the Sentencing Guidelines were unconstitutional, similarly fails. Accordingly, the Government respectfully submits that Schultz's petition be denied.

## Background

Indictment 01 Cr. 683 (JSR) was filed on July 16, 2001, in one count. The Indictment charged Schultz with conspiring to receive stolen Egyptian antiquities that had been transported in interstate and foreign commerce, in violation of Title 18, United

States Code, Section 371.

Trial commenced on January 28, 2002, and concluded on February 12, 2002, when the jury returned its guilty verdict against Schultz.

The evidence at trial overwhelmingly established that Schultz, a Manhattan art dealer, participated in a conspiracy from the early 1990's through May 1996 to receive and sell world-class antiquities—worth millions of dollars—that had been stolen from Egypt. Schultz's partner in this criminal enterprise, Jonathan Tokeley Parry, a British national, made numerous trips to Egypt, financed by Schultz, to obtain these archaeological treasures and smuggle them out of Egypt. Aided by another co-conspirator, Ali Ibrahim Ali Farag, an Egyptian national, Tokeley Parry acquired a number of antiquities on the black market in Egypt from tomb-raiders, building contractors, and corrupt Egyptian officials, among others. All of these valuable artifacts of ancient Egyptian history and culture, as Schultz and Tokeley Parry well knew, belonged to the Government of Egypt under Egypt's patrimony law, "Law 117," which went into effect in 1983.

Once Tokeley Parry had successfully smuggled the antiquities out of Egypt, he and Schultz created false provenances of their origin, to make it appear as if they had been removed from Egypt long before the enactment of Law 117. Tokeley Parry, a skilled restorer of antiquities, restored several of the pieces using

2

techniques from the 1920's. Schultz then offered the stolen antiquities for sale at his art gallery located on Madison Avenue, which specialized in Classical, Egyptian, Near Eastern, Early European and Eskimo antiquities. Schultz falsely told prospective buyers that the antiquities came from old private collections predating Law 117—including the fictitious "Thomas Alcock Collection," named after a long-deceased great uncle of Tokeley Parry—and succeeded in selling one piece, a 3,000-year old stone head of an Egyptian pharaoh, for $1.2 million.

The scheme initially came to the attention of law enforcement in June 1994 when New Scotland Yard arrested Tokeley Parry for conduct relating to his theft of Egyptian antiquities. Even after Tokeley Parry's arrest, however, he and Schultz continued for another two years to deal in stolen treasures from Egypt, taking additional steps to conceal their activities from authorities.

At trial, the Government called 12 witnesses and introduced more than 135 exhibits to establish Schultz's guilt. The Government's chief witness was Tokeley Parry, who testified over a five-day period. Tokeley Parry's testimony was fully corroborated by, among other things, (i) numerous letters between Schultz and Tokeley Parry written during the conspiracy, which were seized from Tokeley Parry's files in England and subpoenaed from Schultz's art gallery in New York; (ii) entries from a

3

contemporaneous diary maintained by Tokeley Parry;
(iii) photographs taken by Tokeley Parry of the stolen
antiquities; and (iv) the testimony of Mark Perry, who helped
Tokeley Parry smuggle stolen antiquities out of Egypt, and
overheard conversations between Tokeley Parry and Schultz.

The Government also elicited the testimony of several
prospective customers and Egyptologists to whom Schultz showed or
tried to sell the stolen antiquities, lying about their
provenance. In addition, the Government offered correspondence
between Schultz and prospective customers, containing Schultz's
misrepresentations about the source of the antiquities; shipping
records; inventory records from Schultz's gallery; and bank
records reflecting financial transactions between Schultz,
Tokeley Parry and persons in Egypt.

On June 11, 2002, this Court sentenced Schultz to a term
of 33 months' imprisonment, to be followed by two years'
supervised release. This Court also ordered Schultz to pay a fine
of $50,000, to return an ancient relief to the Government of
Egypt as restitution, and to pay a mandatory special assessment
of $100.

In announcing Schultz's sentence, this Court stated that
its conclusion was that the value of the stolen antiquities that
Schultz conspired to receive was between $1.5 and $2.5 million
and that, accordingly,  pursuant to Section 2B1.1 of the

4

Sentencing Guidelines (1995), a 14-level enhancement to the base offense level was appropriate. (Sent. Tr. at 12-13). This Court also made an alternative finding, namely that if it were to accept as correct Schultz's assertion at sentencing that the economic value of the antiquities he conspired to receive was less than $70,000, then this Court would upwardly depart seven levels in order to capture the value of the antiquities to Egypt, the victim of Schultz's crime. (Sent. Tr. at 13-14).

As Schultz acknowledges in his petition, at sentencing he did not challenge the constitutionality of the Guidelines. (Br. at 3).

On September 13, 2002, Schultz filed his brief on appeal, claiming, among other things, that his conviction should be overturned because the National Stolen Property Act does not reach claims of ownership based on a foreign nation's declaration of national ownership. On appeal, Schultz raised no issues concerning his sentence. On June 25, 2003, the Second Circuit affirmed Schultz's conviction. Thereafter, Schultz filed a petition for writ of certiorari with the United States Supreme Court. Schultz's conviction became final when the Supreme Court denied Schultz's petition on January 12, 2004.

## POINT ONE

## Schultz Cannot Circumvent *Teague* By Refashioning his Claim Under *Booker* as One Under *Apprendi* and *Ring*

On January 12, 2005, the Supreme Court announced its

decision in *United States* v. *Booker*, 125 S. Ct. 738 (2005). On

February 7, 2005,[1] Schultz filed the instant petition, claiming

that, under *Booker,* his sentence was imposed in violation of law.

(Br. 6).[2] Recognizing that his conviction was final at the time

that *Booker* was announced, Schultz seeks to skirt the issues of

collateral review set forth in *Teague* v. *Lane*, 489 U.S. 288

(1989), by refashioning his *Booker* claim into an *Apprendi* claim.

Specifically, Schultz argues that the rule announced in *Booker*

was not a new rule but one that had been declared years before in

*Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and *Ring* v. *Arizona*,

536 U.S. 584 (2002), before his conviction became final.

Accordingly, Schultz claims that he can collaterally attack his

---

[1]     Schultz filed his petition on January 11, 2005, and
then asked for additional time to file his papers in support of
his petition; his conviction would have been final for one year
on January 12, 2005. (Cite ADePA)

[2]     Schultz's specific contention is that he was denied his
Sixth Amendment right to a jury trial because his sentence
exceeded the maximum sentence he could have received based on the
facts reflected in the jury's verdict. He asserts that this Court
was precluded from sentencing him under the Sentencing Guidelines
section applicable to offenses involving the receipt of stolen
property, because the value of the stolen property he received
was not put to the jury. (Br. 6).

6

sentence by relying on those earlier decisions.

Schultz's claims are without merit. If Schultz sought to rely on *Apprendi* and *Ring* to challenge his sentence, he should have done so years before. By failing to raise a claim under *Apprendi* and *Ring* on direct appeal, Schultz procedurally waived it. Regardless, even if Schultz could seek collateral relief based on *Apprendi* and *Ring*, it would do him no good because the Supreme Court did not rule in those cases that the Guidelines violated the Sixth Amendment. As set forth below, it was not until the Supreme Court's decision in *Booker* that such a rule was established. And because Schultz's conviction was final at the time that *Booker* was announced, he is not entitled to relief under it.

## A. Applicable Law

To obtain relief from a conviction under § 2255, a movant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Graziano* v. *United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (citations omitted); *see also Brecht* v. *Abrahamson*, 507 U.S. 619, 634 & n.8 (1993); *United States* v. *Wright*, 524 F.2d 1100, 1101 (2d Cir. 1975) ("Not every error of law may be successfully asserted in proceedings under [§ 2255]; the error must be a fundamental one which inherently

7

results in a complete miscarriage of justice.")(citation omitted).

It is well-settled that federal prisoners may not employ § 2255 as a substitute for direct appeal. *See, e.g., United States* v. *Frady*, 456 U.S. 152, 165 (1982); *United States* v. *Addonizio*, 442 U.S. 178, 184-85 (1979). As the Supreme Court explained in *Frady*, "[o]nce the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially where, as here, he already has a fair opportunity to present his federal claims to a federal forum." *United States* v. *Frady*, 456 U.S. at 164. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley* v. *United States*, 523 U.S. 614, 622 (1998) (citations omitted); *accord Massaro* v. *United States,* 538 U.S. 500, 504 (2003) ("claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"); *United States* v. *Warren*, 335 F.3d 76, 79 (2d Cir. 2003) ("If the defendant fails to raise a claim of error on direct appeal, habeas relief is generally available only upon a showing of cause and prejudice.").

The Supreme Court has made clear that "cause" is measured

8

by a stringent standard of diligence. *See, e.g.*, *Coleman* v. *Thompson*, 501 U.S. 722, 752 (1991) ("cause" is "something external to the petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or inadvertence is not 'cause'"); *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986) ("cause" standard requires movant to demonstrate effect of some external factor, like "interference by officials"). Further, "the resulting prejudice must create an '*actual* and substantial disadvantage, infecting [the defendant's] entire trial with error of constitutional dimensions.'" *Narvaez* v. *United States*, No. 95-941, 2003 WL 21749638, at *2 (S.D.N.Y. July 29, 2003).

If a defendant fails to establish "cause" and "prejudice" to excuse a procedural default, he can obtain collateral review of his constitutional claim only by demonstrating that the constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley* v. *United States*, 523 U.S. at 623. The Supreme Court has emphasized that "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.*

## B. Discussion

Schultz's *Apprendi* and *Ring* claim is procedurally defaulted. Schultz cannot show "cause" to explain why he did not raise his *Apprendi* claim at sentencing. *Apprendi* was decided on June 26, 2000, over one year before Schultz was even indicted. *Ring* was decided on June 24, 2002, well before Schultz filed his

9

appeal.[3] In his direct appeal to the Second Circuit, he did not raise *Apprendi* or *Ring*. Schultz does not allege that he was unaware of these decisions, or that any external impediment prevented him from raising the issue through his attorney. *See, e.g., Leaks* v. *United States*, 841 F. Supp. 536, 540 (S.D.N.Y. 1994) ("Leaks cannot show 'cause' because his claims are based on facts and legal principles that were available to him during the direct appeal of his conviction and sentence.").

Schultz essentially blames his attorney for failing to raise the *Apprendi* and *Ring* claim, in that the second claim for relief in his § 2255 motion claims ineffective assistance of counsel based on his attorney's failure to raise these issues. Ineffective assistance of counsel can qualify as "cause" for a procedural default, but "[n]ot just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards* v. *Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted). As explained below, however, Schultz did not receive constitutionally ineffective assistance of counsel at sentencing or on appeal, and so that

---

[3]      Schultz's appellate brief was filed on September 13, 2002.

10

does not aid him in showing cause for his failure to raise
*Apprendi* and *Ring* issues at sentencing or on direct appeal.

Mere attorney error or inadvertence does not constitute
"cause" to excuse a procedural default. "[T]he mere fact that
counsel failed to recognize the factual or legal basis for a
claim, or failed to raise the claim despite recognizing it, does
not constitute cause for a procedural default." *Murray* v.
*Carrier*, 477 U.S. 478, 486 (1986). In the absence of some
evidence of external impediments interfering with Schultz's
ability to raise *Apprendi* at sentencing and *Apprendi* or *Ring* on
direct appeal, he has failed to show cause why his default should
be excused.

## POINT TWO

### Schultz's Counsel Was Not Constitutionally Ineffective For Failing To Raise *Apprendi*-Related Claims At Sentencing or For Failing to Raise *Apprendi*- or *Ring*-Related Claims on Direct Appeal

Schultz's  second and third claims assert that his counsel
was ineffective when, at Schultz's sentencing and later on
appeal, counsel failed to challenge his sentence on grounds that
it constituted a violation of his Sixth Amendment right to a jury
trial. Such an argument would have been futile, and therefore the
failure to make it did not constitute ineffective assistance.

11

## A. Applicable Law

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro* v. *United States*, 538 U.S. at 504. To prevail on a claim of ineffective assistance of counsel, a defendant must, first, overcome a strong presumption that his counsel's conduct was reasonable and show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," *Strickland* v. *Washington*, 466 U.S. 668, 687-88 (1984); and second, "affirmatively prove prejudice," that is, demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693-94. Only if both of these elements are satisfied can a defendant demonstrate that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Under the first prong of the *Strickland* test, a reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, 'bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States* v. *Aguirre*, 912 F.2d 555,

12

560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Thus, the ineffectiveness inquiry should focus on "the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696. The emphasis should not be on grading counsel's performance, but on "whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id*.

The Supreme Court has explained that there is no inconsistency between a finding that counsel was effective and a finding that counsel committed an inadvertent failure that results in a subsequent procedural bar:

> We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* v. *Washington*, *supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts.

*Murray* v. *Carrier*, 477 U.S. at 488.

With regard to ineffective assistance of counsel on appeal, the Second Circuit has made clear that,

13

'[i]n attempting to demonstrate that appellate
counsel's failure to raise a state claim constitutes
deficient performance, it is not sufficient for the
habeas petitioner to show merely that counsel
omitted a nonfrivolous argument, for counsel does
not have a duty to advance every nonfrivolous
argument that could be made.'

Clark v. Stinson, 214 F.3d at 322 (quoting Mayo v. Henderson, 13
F.3d 528, 533 (2d Cir. 1994)); see also Jones v. Barnes, 463 U.S.
745, 751-54 (1983) (holding that a defendant has no
constitutional right to have appellate counsel raise every
non-frivolous issue on appeal, even if defendant requests that
counsel raise a specific issue; stressing that "[e]xperienced
advocates since time beyond memory have emphasized the importance
of winnowing out weaker arguments on appeal and focusing on one
central issue if possible, or at most on a few key issues").  In
the appellate context, a petitioner may establish the deficient
performance component of the Strickland test only by showing that
counsel "omitted significant and obvious issues while pursuing
issues that were clearly and significantly weaker." Mayo, 13 F.3d
at 533; accord Stinson, 214 F.3d at 322; see also Mayo, 13 F.3d
at 533 ("a reviewing court must judge [counsel's] conduct on the
basis of the facts of the particular case, 'viewed as of the time
of counsel's conduct,' . . . and may not use hindsight to
second-guess his strategy choices").  Further, counsel is not
required to be able to predict how the law may develop to be
effective.  See United States v. Ardley, 273 F.3d 991, 993 (11th

14

Cir. 2001) (describing "a wall of binding precedent that shuts out any contention that any attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel"); *Spaziano* v. *Singletary*, 36 F.3d 1029, 1039 (11th Cir. 1994)("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (citations omitted).

Moreover, the law is clear that although any increase in a prison sentence establishes prejudice, *see Glover* v. *United States*, 531 U.S. 198, 203 (2000), it is insufficient for a petitioner to demonstrate that a non-frivolous argument, if accepted on appeal, would have produced a different sentence. Rather, the court must determine whether, "absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different," specifically, that there was a "reasonable probability that the claim would have succeeded." *Mayo*, 13 F.3d at 534 (citing *Claudio* v. *Scully*, 982 F.2d 798, 803 (2d Cir.1992)).

## B. Discussion

Schultz contends that his counsel erred by failing to argue at sentencing and on appeal that the District Court's use of a fourteen-level upward adjustment under § 2B1.1 of the Sentencing Guidelines violated the Fifth and Sixth Amendments. (Br. 20). But

15

the applicable law would have rendered such an argument futile, and so Schultz's counsel was not constitutionally ineffective for failing to raise it.

In the wake of *Apprendi*, a number of defendants sought to apply its reasoning to the numerous factual calculations required under the Sentencing Guidelines. In *United States* v. *Garcia*, 240 F.3d 180 (2d Cir. 2001), this Court rejected the contention that *Apprendi* applied to a district court's determination of facts relevant to imposing sentence within the statutory limits. "We see nothing in the Court's holding in *Apprendi* or its explication of the holding that alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum, an authority the Supreme Court has recognized both before the Sentencing Guidelines and since their adoption." *Id.* at 183. *See also United States* v. *Luciano*, 311 F.3d 146 (2d Cir. 2002). As a result, any claim that Schultz's counsel might have made at sentencing regarding this Court's 14-level enhancement was destined to fail, as was any similar claim raised on direct appeal. The failure to make demonstrably futile arguments cannot constitute constitutionally ineffective assistance of counsel.

.

16

## POINT THREE

## Even If Schultz's Claim is Deemed To Constitute a *Booker* Claim, It Fails Because *Booker* Does Not Apply Retroactively

Schultz argues in the alternative that he is entitled to relief even if his claim is viewed as one under *Booker*, because, according to Schultz, *Booker* (and *Blakely* and *Apprendi*) announced substantive rules, not procedural ones, and they were watershed rulings. The Government respectfully disagrees.

In *Schriro* v. *Summerlin*, 124 S. Ct. 2519, 2522 (2004), the Supreme Court, referring to *Teague* v. Lane, explained that when a decision of the Court results in the pronouncement of a new rule, that rule applies to all criminal cases pending on direct review. The Court found, however, that new rules do not necessarily apply retroactively to convictions that have become final. While new rules that are substantive generally apply retroactively, new procedural rules generally do not. *Id.* at 2522, 2523. For a new procedural rule to be the basis for retroactive collateral relief, it must be a "'watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 2523. To date, the Second Circuit has not determined whether Booker is retroactive. However, other circuits have held that it is not, as have various district courts. *See Humphress* v. *United States*, No. 03-5951, 2005 WL 433191 (6th Cir. Feb. 25, 2005); *McReynolds* v. *United States*, 397

17

F.3d 479, 2005 WL 237642 (7th Cir. Feb 2, 2005); *United States* v. *Aikens*, No. 01-335, 2005 WL 433440 (E.D. Pa. Feb. 25, 2005); *Rucker* v. *United States*, No. 04-00914, 2005 WL 331336 (D. Utah Feb. 10, 2005).

## A. *Booker* Established a New Rule

To determine whether a rule applies retroactively, it is necessary first to determine whether or not the rule sought to be applied is a "new" rule. *Beard* v. *Banks*, 124 S. Ct. 2504, 2510 (2004); *Graham* v. *Collins*, 506 U.S. 461, 466 (1992) "A case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague* v. Lane, 489 U.S. 288, 301 (1989)(emphasis in original). "A rule is new when it 'breaks new ground or imposes a new obligation on . . . the Federal Government . . . A rule is not new where precedents 'inform, or even control or govern' but do not 'compel' its creation." *Rucker* v. *United States*, 2005 WL 331336 (D. Utah, Feb. 10, 2005)(quoting *Johnson* v. *McKune*, 288 F.3d 1187, 1196 (10th Cir. 1996)).

To date, the Second Circuit has not ruled on whether *Booker* established a new rule.[4]  However, the courts that have

_____

[4]  Although the Second Circuit has not expressly stated that *Booker* announced a new rule, its decision in *United States* v. *Crosby*, No. 03-1675, 2005 WL 240916 (2d Cir. Jan. 14, 2005), suggests that the Circuit will so find given that the Circuit called the decision in *Booker/Fanfan* "momentous" and set forth in great detail the framework in which it decided *Crosby* to give

considered this issue have held that *Booker* announced a new rule of law in that its ruling dramatically changed the jurisprudence on what the Sixth Amendment required. *See Humphress* v. *United States*, No. 03-5951, 2005 WL 433191 (6th Cir. Feb. 25, 2005)(finding that fact that federal judiciary was deeply divided on whether rule announced in *Blakely* applied to the Sentencing Guidelines supported the conclusion that *Booker* clearly announced new rule); *McReynolds* v. *United States*, 397 F.3d 479, 2005 WL 237642 (7th Cir. Feb 2, 2005)("*Blakely* reserved decision about the status of the Federal Sentencing Guidelines . . . so *Booker* itself represents the establishment of a new rule . . . .")*United States* v. *Aikens*, 2005 WL 433440 (E.D. Pa. Feb. 25, 2005)(rejecting petitioner's argument that *Booker* merely clarified *Apprendi* for, among other reasons, *Booker* significantly altered the way that federal courts use the Sentencing Guidelines); *see Rucker* v. *United States*, 2005 WL 331336 (D. Utah Feb. 10, 2005)(holding that neither *Blakely* nor *Booker* was dictated by precedent and that one of them announced a new rule, but not deciding which one).

In sum, contrary to Schultz's assertions, neither *Apprendi*

---

guidance to other judges and lawyers. In *Green* v. *United States*, No. 04-1817, 2005 WL 237204 (2d Cir. Feb. 2, 2005), the Second Circuit ruled that neither *Blakely* nor *Booker* was retroactive to second or successive petitions filed pursuant to 28 U.S.C. § 2255.

19

or *Ring* dictated the invalidation of the Sentencing Guidelines. While the holding in *Booker* may have been foreshadowed by *Apprendi* and *Ring*, it was *Booker* that changed the meaning of what the Sixth Amendment requires and that imposed a new regime of procedures that must be followed at sentencing.

## B. The Rule Announced In *Booker* Was a Procedural Rule

Schultz asserts that the Court's opinion in *Booker* announced a new substantive rule. Schultz is incorrect; *Booker*, like *Ring* and *Apprendi* before it, plainly announced a new procedural rule.

"A rule is substantive rather than procedural if it alters the range of conduct of the class of persons that the law punishes. In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." *Summerlin*, 124 S. Ct. at 2523 (internal citations omitted; holding that *Ring* announced a procedural rule.)

Under the standard set forth by the Supreme Court in *Summerlin*, the rule set forth in *Booker* is procedural. *Booker* does not purport to hold that a defendant may not be punished for certain conduct, but rather that he may not be punished above the applicable penalty in the absence of certain procedural safeguards. This is clearly a procedural ruling and in no way purports to change the definition of what constitutes a crime. *See Varela* v. *United States,* No. 04-11725, 2005 WL 367095, at *3

20

(11th Cir. Feb. 17, 2005) (holding that rule announced in *Booker* is "a 'prototypical procedural rule [ ],'" and holding that *Booker* is not retroactive(quoting *Summerlin*, 124 S. Ct. at 2523); *McReynolds*, 397 F.3d 479, 2005 WL 237642; *Rucker*, 2005 WL 331336; *see also Coleman* v. *United States*, 329 F.3d 77, 84-88 (2d Cir. 2003) (holding that *Apprendi* announced a procedural rule); *Curtis* v. *United States*, 294 F.3d 841, 843 (7th Cir. 2002)(holding that "*Apprendi* is about nothing but procedure - who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt).").

Schultz asserts that the rule announced in *Booker* is substantive because it concerned not just who made decisions at sentencing (judge or jury) but the standard of proof (preponderance versus beyond a reasonable doubt). (Br. at 14). In support of his argument, Schultz relies on a footnote in *Summerlin* in which the Court stated that "[b]ecause Arizona law already required aggravating factors to be proved beyond a reasonable doubt . . . that aspect of *Apprendi* was not at issue." *Summerlin*, 124 S.Ct. 2522, n.1. From this, Schultz argues that it is an open issue whether the standard of proof used at sentencing is a procedural or substantive issue.

Schultz is incorrect. Although the burden-of-proof issue may not have arisen in *Ring*, it was an issue in *Apprendi*, which numerous courts have held is not retroactive. *See Coleman* v.

21

*United States*, 329 F.3d 77 (2d Cir. 2003); *In re Turner*, 267 F.3d 225 (3d Cir. 2001); *United States* v. *Sanders*, 247 F.3d 139 (4ᵗʰ Cir. 2001); *United States* v. *Curtis*, 294 F.3d 841 (7ᵗʰ Cir. 2002); *United States* v. *Moss*, 252 F.3d 993 (8ᵗʰ Cir. 2001); *Jones* v. *Smith*, 231 F.3d 1227 (9ᵗʰ Cir. 2000); *McCoy* v. *United States*, 266 F.3d 1245 (11ᵗʰ Cir. 2001). Indeed, in *Curtis*, Judge Easterbrook, in finding that *Apprendi* "is about nothing but procedure," rejected Schultz's argument with the explanation that"*Apprendi* is concerned with the identity of the decision-maker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." *Curtis*, 294 F.3d at 843.

## C. *Booker* Did Not Announce a Watershed Procedural Rule

Schultz asserts that even if the decision in *Booker* announced a procedural rather than a substantive rule, it was a watershed rule. The Government respectfully disagrees.

Courts recognize a narrow exception to the general rule proscribing retroactive application of procedural rules on collateral review for new "watershed rules of criminal procedure" that are necessary to the fundamental fairness and accuracy of the criminal proceeding. *Teague* v. Lane, 489 U.S. 288, 311-13 (1989)(plurality opinion); *see also Sawyer* v. *Smith*, 497 U.S. 227, 241-42 (1990). As this Court has noted previously, this exception to non-retroactivity "is exceedingly narrow, applying

22

'only to a small core of rules requiring observance of those procedures that...are implicit in the concept of ordered liberty.'" *United States* v. *Mandanici*, 25 F.3d 519, 528 (2d Cir. 2000) (quoting *Graham* v. *Collins*, 506 U.S. 461, 478 (1993)). To fit within the "watershed" exception, it is not enough that a new rule "is aimed at improving the accuracy of trial," *Sawyer*, 497 U.S. at 242, or even that it promotes "[t]he objectives of fairness and accuracy," *Saffle* v. *Parks*, 494 U.S. 484, 495 (1990). Rather, the rule must also "'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at 242 (quoting *Mackey* v. *United States*, 401 U.S. 667, 693 (1971); *see also Bousley*, 523 U.S. at 620 ("[U]nless a new rule of criminal procedure is of such a nature that 'without [it] the likelihood of an accurate conviction is seriously diminished,' there is no reason to apply the rule retroactively on habeas review." (quoting *Teague*, 489 U.S. at 313)).

The Supreme Court has also forewarned that such rules are rare, *Sawyer*, 497 U.S. at 242-43, and has underscored the narrowness of the second *Teague* exception by invoking the "sweeping rule" of *Gideon* v. *Wainwright*, 372 U.S. 335 (1963), which held that a defendant has a right to be represented by counsel in all criminal trials for serious offenses, as an example of the rare type of rule that fits within the exception.

23

*O'Dell* v. *Netherland*, 521 U.S. 151, 167 (1997); *see Saffle*, 494 U.S. at 495 (rule must have "the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception" to qualify under the second *Teague* exception). To further emphasize the narrowness of the exception, the Supreme Court has stressed that it "believe[s] it unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313 (plurality opinion); *accord Graham*, 506 U.S. at 478; *Sawyer*, 497 U.S. at 243; *Butler* v. *McKellar*, 494 U.S. 407, 416 (1990). Indeed, on the eleven occasions that the Supreme Court has considered whether a proposed new rule of criminal procedure meets the standards for the second *Teague* exception, it has never found the rule to satisfy the requirements for "watershed" classification. *See Mandanici*, 205 F.3d at 529 ("Beginning with the rule at issue in *Teague*, the [Supreme] Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively.").

The fact that *Booker* does not fall within either of the exceptions to non-retroactivity was essentially decided by the Supreme Court in *Summerlin*. *Varela* v. *United States*, 2005 WL 367095, at *2 (*Summerlin* is "essentially dispositive" of question of Booker's retroactivity). In *Summerlin*, the Court rejected the

24

contention that the jury requirement for sentencing factors established in *Apprendi* and *Ring* was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any . . . 'ha[s] yet to emerge.' *Tyler* v. *Cain*, 533 U.S. 656, 667, n.7, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001) (quoting *Sawyer* v. *Smith*, 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L. Ed. 2d 193 (1990))." *Summerlin*, 124 S. Ct. at 2523. The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all*, we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." *Id.* at 2525 (emphasis in original).

This result is directly applicable to the *Booker* holding. If, as in *Summerlin*, the requirement that a jury determine an aggravating factor that leads to imposition of the death penalty is not so fundamental to require retroactive application, surely the same holding applies to the more general Guideline issues to which *Booker* is addressed.[5]

---

<sup>5</sup>     Indeed, prior to *Summerlin*, the Second Circuit, applying similar reasoning, held that the decision in *Apprendi* was not retroactively applicable in cases on collateral review.

In sum, under the well-established principles that
undergird the Supreme Court's retroactivity jurisprudence, and in
light of the federal courts' treatment of *Apprendi* and *Blakely*
claims on collateral review, it is clear that *Booker* is not
retroactive.  Accordingly, the rule announced in *Booker* is
inapplicable to Schultz's Petition — which seeks to vacate a
conviction as to which the direct appeal process ran its course
long before *Booker* was decided.  In this circumstance, Schultz's
*Booker* Claim is meritless.

_____

*See Coleman* v. *United States*, 329 F.3d 77, 90 (2d Cir.), *cert.
denied*, 124 S. Ct. 840 (2003). The Court in *Coleman* found that
*Apprendi* was not retroactive because it "announced a rule that
[was] both new and procedural but not watershed" under *Teague*.
*Id*. In a similar vein, because *Apprendi* is not applicable on
collateral review, *Blakely* – which is an extension of *Apprendi* –
is not so applicable, and numerous courts that have addressed the
issue of the retroactivity of *Blakely* in initial § 2255
proceedings have so held. *See*, *e.g.*, *Concepcion* v. *United States*,
No. 97-2171, 2004 WL 1895114, *2(E.D.N.Y. Aug. 25, 2004)("With
regard to [movant's] argument that *Blakely* applies retroactively
to his motion, the Court disagrees."); *Garcia* v. *United States*,
No. 04-0465, 2004 WL 1752588, *5(N.D.N.Y. Aug. 4, 2004)("*Blakely*
does not apply retroactively to § 2255 petitions"); *United States*
v. *Lowe*, No. 04-50019, 2004 WL 1803354, *3 (N.D.Ill. Aug. 5,
2004)("[T]he court finds that *Blakely* does not apply
retroactively to motions under § 2255."); *United States* v.
*Stoltz*, No. 03-5580, 2004 WL 1619131 (D. Minn. July 19, 2004)(It
is "the Court's conclusion that *Blakely* does not apply
retroactively to matters on collateral review."). Just as
*Apprendi* and *Blakely* are not retroactive under the Supreme
Court's *Teague* jurisprudence, as explicated in *Summerlin*, so too
their progeny — *Booker*— is not retroactive.

26

## Conclusion

For the reasons set forth above, the Government

respectfully submits that Schultz's Petition be denied.

Very truly yours,

DAVID N. KELLEY
United States Attorney

By: /marua Ruth Isaacson

MARCIA RUTH ISAACSON
Assistant United States Attorney
(212) 637-2211

7

27